FILED
2009 Feb-18  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

THERESA A. JACKSON,

_____Plaintiff,

vs.                                          CASE NO. CV-08-J-0936-NE

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

         Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties.  This court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff seeks Supplemental Security Income based on low back pain, hypertension, obesity, major depressive disorder, bipolar disorder, obsessive compulsive disorder, and attention deficit hyperactivity disorder ("ADHD") (R. 668, 697, 707, 726, 747, 781).  The plaintiff's alleged disability onset date is February 19, 2004 (R. 664-65).

On appeal, the plaintiff argues that the decision of the Administrative Law Judge (ALJ) that the plaintiff is capable of performing a significant range of light work is against the substantial weight of the evidence.  Plaintiff's Memorandum at 5.

The court has considered the record and the briefs of the parties.  For the

reasons set forth herein, the decision of the Commissioner is **REVERSED**.

## Factual Background

The plaintiff was born on July 14, 1957, completed the twelfth grade, and earned a two-year associate's degree in paralegal studies in 2003 (R. 21, 1200, 1204). The plaintiff has past relevant work as a garment inspector, which is a light, semiskilled job (R. 1210-11).   At the time of the hearing, the plaintiff was unemployed, and the ALJ determined that she had not engaged in substantial gainful activity since 1991 (R. 1207).   The plaintiff testified that she had tried to get a job, but when she did obtain work, she would always get fired (R. 1212).   The plaintiff never sought a job in the paralegal field due to illness, and she stated that the primary impairments preventing her from working were her mental problems (R. 1204, 1212).

The medical records reflect a lengthy history of mental issues for the plaintiff. The plaintiff reported that she started feeling depressed as far back as 1980 (R. 1014). The plaintiff's psychological evaluation from 1996 states that she had received treatment from the mental health center since 1985 for depression, anxiety, and panic attacks (R. 499).  In 1996 Dr. Lois Pope, a non-treating physician, diagnosed her with anxiety disorder, depressive disorder, and psychotic disorder, and her global assessment of functioning ("GAF") score was 40 (R. 499-500).  The plaintiff told Dr. Pope that she felt like bugs were crawling all over her, and she showed her a hole in

2

her arm that she had caused due to scratching since she thought there was a bug under her skin (R. 499).  Dr. Pope opined that "[i]t would be very difficult for her to obtain and maintain employment at this time due to her anxiety and depression" (R. 500). The plaintiff was prescribed medications such as Zoloft as far back as 1994 (R. 548) and Celexa in 2003 (R. 943), but records from the plaintiff's therapy sessions and consultative exam indicate her financial inability to afford her medications[1] (R. 534, 943).

Records from the Huntsville/Madison County Mental Health Center, a treating source, indicate a past history of anxiety disorder and depressive disorder in 1997 and 1998 (R. 825-26, 833).  In 1994 the mental health center diagnosed the plaintiff with depressive disorder, and it suspected bipolar affective disorder type II (R. 304).  In 2001 she was diagnosed with attention deficit hyperactivity disorder ("ADHD") (R. 1033).  Notes from the plaintiff's February 2004 record state that she tried to jump out of a moving car in 2002 (R. 1015).  In February 2005 the plaintiff's diagnosis listed major depressive disorder, obsessive compulsive disorder, and suspected bipolar disorder (R. 1126).  Her GAF score at the time was 65.  *Id.*

The plaintiff has suffered from major depression since 2001 (R. 838).  Dr.

---

[1]  The plaintiff's financial difficulties are further supported by the fact that she lives in Section 8 housing, receives food stamps, and receives a $200 monthly payment from her son (R. 1201-02).

Caroline Batchelor saw the plaintiff in 2001 for an assessment of her cognitive abilities, memory, and learning and academic achievement, and diagnosed her with major depressive disorder, ADHD, sexual abuse as a child (victim), and sexual abuse as an adult (victim).  *Id.*  Dr. Batchelor also suspected a learning disorder.  *Id.*  The plaintiff's GAF score was 50, and her memory and learning fell in the below average to average range.  *Id.*  Dr. Batchelor also found that the plaintiff's academic achievement fell in the fourth to eighth grade level (R. 834).  She found that due to the plaintiff's history of abuse and depression, the plaintiff would be suited for an environment with "limited interpersonal contact," but she would need supervision regarding her requirements and task performance (R. 838).

Dr. Pope saw the plaintiff again in 2001 for a comprehensive psychological evaluation (R. 843).  She found that the plaintiff would have "no serious cognitive limitations in her intellectual abilities that would restrict her ability to understand, remember, and carry out instructions in an employment setting," but she did suffer from attention and concentration difficulties that warranted treatment (R. 844).  Dr. Pope stated that the plaintiff "should be referred for consideration of medication to address these symptoms and symptoms of depression."  *Id.*  In 2003 Dr. Jon Rogers performed a psychological evaluation on the plaintiff (R. 937).  At this time, the plaintiff reported a depressed mood, problems concentrating and making decisions,

4

and cursing, throwing objects and crying. *Id.* Dr. Rogers' diagnosis showed ADHD and depressive disorder (R. 940). Her GAF score was 55. *Id.* Dr. Rogers found her mental impairment to be "moderate," and he stated that the plaintiff's "ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting would be moderately impaired" (R. 941, 941A).

Dr. John Lary, Jr., performed a consultative examination on the plaintiff in 1996,[2] 2003, and 2004. In 2003 he noted that the plaintiff suffered from chronic back pain with disc space narrowing at L4-5 and L5-S1, hypertension, depression, complaints of ADHD, and multiple somatic complaints (R. 945). The plaintiff complained that her back pain had worsened since the 1996 exam due to her two car accidents (R. 942). He concluded that the plaintiff's "ability to stand, walk, lift, carry, climb, reach, stoop, squat, and sit may be somewhat impaired by chronic back pain complaint," but "[h]er ability to see, hear, speak, understand, and manipulate small objects is unimpaired" (R. 945). In 2004 Dr. Lary found that "her ability to sit, stand, walk, lift, carry, bend, squat, reach, see, hear, speak, understand, and manipulate small objects is unimpaired" (R. 1073-74). However, Dr. Lary "express[ed] no

---

[2] Dr. Lary refers to this 1996 examination in his 2003 report, noting that her name was Theresa Plummer at the time (R. 942).

opinion about any psychological or psychiatric complaints or diagnoses" (R. 1074).

The plaintiff's medical records from Central Health Care, a treating source from January 2001 through March 2004, indicate numerous complications (R. 988-1003). In January 2001 the plaintiff was diagnosed with depression (R. 1003). In April 2002 and April 2003 the plaintiff sought treatment for back pain, neck pain, and headaches resulting from two separate car accidents (R. 995, 1002). In May 2003 the plaintiff was noted to suffer from fibromyalgia (R. 993). Central Health Care records from January and March of 2004 diagnose the plaintiff with obesity, with a height of 5 feet, 1 inch, and 241.5 pounds in January and 234 pounds in March (R. 989-90). The January 2004 record also diagnoses the plaintiff with depression (R. 990).

As recent as December 30, 2005, the plaintiff was admitted to Huntsville Hospital due to increased symptoms of depression (R. 1138). She began having suicidal feelings, and she began hearing voices prior to her admittance. *Id.* The plaintiff reported to her physician that she could not sleep, her thoughts were racing, she could not control herself, and she heard voices saying: "I am going to kill you" (R. 1139). The plaintiff's diagnosis was bipolar disorder with psychotic features, morbid obesity, hypertension, and a history of hypercholesterolemia (R. 1140). The plaintiff's GAF was 45. *Id.* The plaintiff had seen her therapist in the past week prior to this incident, but she did not notify the therapist about the inner voices (R. 1141).

She also had been admitted to Huntsville Hospital on November 20, 2005, for racing thoughts (R. 1141, 1181).

At the hearing before the ALJ on December 9, 2005, the plaintiff testified that she has crying spells, and she stays in bed the entire day for 15 to 20 days per month (R. 1222). Near the conclusion of the hearing, the ALJ presented a hypothetical to the vocational expert of a younger individual that could lift 10 to 15 pounds with both hands, sit at one time for 30 to 40 minutes, stand at one time for 20 minutes, and walk at one time for one half mile (R. 1232). The ALJ did not initially include any of the plaintiff's mental limitations in this hypothetical to the vocational expert. Based on this hypothetical, the vocational expert testified that the plaintiff could not perform her past relevant work as an inspector, but she could perform the light, unskilled job of tanning salon attendant and the light, unskilled job of furniture rental consultant (R. 1232-33). The plaintiff's attorney then posed the same hypothetical to the vocational expert but included the plaintiff's mental limitations, adding that the hypothetical individual "had difficulty remembering, concentrating, and problems with persistence and pace to the marked level" (R. 1233-34). The vocational expert stated that such an individual would not be able to perform the two light, unskilled jobs mentioned previously or any jobs that were sedentary or otherwise (R. 1234). The ALJ then asked whether the plaintiff would be able to perform the two light,

7

unskilled jobs if the plaintiff's limitations were at the "moderate" level as opposed to the "marked" level (R. 1235). The vocational expert testified that an individual having a "moderate" level in concentration, persistence, and pace would still be capable of performing the light, unskilled work. *Id.*

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of [the] decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

8

## Legal Analysis

In the case before this court, the ALJ determined that the plaintiff had the residual functional capacity to perform work at the "light" level (R. 26, 29). The ALJ specifically found that the plaintiff's impairments do not prevent her from performing jobs such as tanning salon attendant, counter clerk, or furniture rental clerk (R. 28).

This court finds that the record does not support this decision. The court finds that the ALJ gave improper weight to non-treating physicians, did not account for the plaintiff's inability to afford her medication and treatment, did not take all of the plaintiff's impairments into consideration, and posed an improper hypothetical to the vocational expert at the hearing. The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

The treating physician's opinion about the nature of impairment and prevalence of symptoms receives controlling weight when it is supported by medically acceptable clinical records and is consistent with other substantial evidence in the case. 20 C.F.R. 404.1527(d)(2). The ALJ relied heavily on the psychological evaluations performed by Dr. Pope and Dr. Rogers, both non-treating physicians (R. 25-26). The ALJ stated that "[p]sychologists who examined the claimant pursuant

9

to her applications have indicated they believe the claimant to be capable of performing the mental requirements of unskilled work" (R. 25). Although Dr. Pope, in 2001,[3] opined that the plaintiff had "no serious cognitive limitations in her intellectual abilities that would restrict her ability to understand, remember, and carry out instructions in an employment setting," he did state that she suffered from attention and concentration difficulties that warranted treatment (R. 844). Dr. Pope further stated that the plaintiff "should be referred for consideration of medication to address these symptoms and symptoms of depression." *Id.* However, Dr. Pope's employment assessment is contrary to the limitations noted in the plaintiff's treating sources. Medical records from Central Health Care, a treating source from January 2001 through March 2004 (R. 988-1003), show that the plaintiff suffered from depression in 2001 (R. 1003). Complications from the plaintiff's depression and mental problems surfaced as recently as late 2005/early 2006 when the plaintiff was admitted to Huntsville Hospital due to suicidal feelings and hearing voices (R. 1138). Although the ALJ mentioned the Huntsville Hospital medical records (R. 24), he failed to mention her diagnosis of bipolar disorder with psychotic features, morbid obesity, hypertension, and a history of hypercholesterolemia (R. 1140). Furthermore,

---

[3] Dr. Pope also examined the plaintiff in 1996, concluding that "[i]t would be very difficult for her to obtain and maintain employment at this time due to her anxiety and depression" (R. 500).

he failed to include the plaintiff's most recent GAF score of 45. *Id.* A rating of 41 - 50 is consistent with serious (moderately severe) symptoms or any serious impairment in social, occupational, or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders IV, Text Revision* (DSM-IV-TR, 2000).

The ALJ relied on Dr. Rogers' 2003 opinion that the plaintiff was able to function independently (R. 941), and the ALJ concluded that this assessment was consistent with the plaintiff's GAF score of 65 at the mental health center in February 2005 (R. 26). The plaintiff's GAF score, however, was not 65 when Dr. Rogers examined the plaintiff. In fact, the plaintiff's GAF score at the time was 55 (R. 940). Dr. Batchelor stated in 2001 that the plaintiff's memory and learning fell in the below average to average range (R. 838). She also determined that due to the plaintiff's history of abuse and depression, the plaintiff would be suited for an environment with "limited interpersonal contact," but she would need supervision regarding her requirements and task performance. *Id.* The ALJ failed to address these limitations. Had the ALJ considered the plaintiff's most recent GAF of 45, in conjunction with her lengthy history of mental and physical limitations noted by treating sources, he would have concluded that the plaintiff is disabled.

The ALJ also failed to account for the plaintiff's inability to afford her medication and treatment. The ALJ stated that "the records of the mental health

center show only intermittent treatment[,] . . . and it was noted on several occasions that the claimant is not compliant with treatment" (R. 25).  The ALJ should have considered the plaintiff's economic difficulties before making this conclusion.  The ALJ was aware that the plaintiff lives in Section 8 housing, receives food stamps, and receives a $200 monthly payment from her son (R. 1201-02).  Although the plaintiff was prescribed Zoloft as far back as 1994 (R. 548) and Celexa in 2003 (R. 943), records from the plaintiff's therapy sessions and consultative exam indicate her financial inability to afford her medications (R. 534, 943).  The Commissioner "may deny SSI disability benefits if the Secretary determines that 1) the claimant failed to follow a prescribed course of treatment, and 2) her ability to work would be restored if she had followed the treatment." *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); 20 C.F.R. § 404.930 (1989)).  Because a claimant's failure to adhere to prescribed treatment cannot be grounds for denial of SSI benefits when the reason for such failure is beyond the claimant's control, whether a financial inability to purchase medication impacted the frequency of the plaintiff's mental impairments should have been considered by the ALJ. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (stating that noncompliance does not prevent the claimant from receiving benefits where noncompliance is the result

of the inability to afford treatment).  "In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored."  *Dawkins*, 848 F.2d at 1213 (stating that "[w]e agree with every circuit that has considered the issue that poverty excuses noncompliance").

Additionally, the ALJ should have developed the record sufficiently to determine whether the plaintiff's continued mental impairments were due to non-compliance with medical treatment.  *See e.g., Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) (holding that the ALJ is obligated to fully and fairly develop the record); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (same); *Ford v. Secretary of Health and Human Services.*, 659 F.2d 66, 69 (5th Cir. Unit B 1981) (holding that the ALJ's findings are not supported by substantial evidence when the record does not contain sufficient facts on which to make an informed decision).  The ALJ in this case did not make any of the required findings regarding the plaintiff's financial inability to afford medication and treatment, nor a finding that medication and treatment would resolve her mental impairments, resulting in a decision not supported by substantial evidence.

Furthermore, the ALJ did not properly consider the combination of the plaintiff's impairments in making his decision.  20 C.F.R. § 416.923 ("In determining

whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Wiggins v. Schweiker*, 679 F.2d 1387, 1392 (11th Cir. 1982) (stating that "the ALJ must consider not only the disabling effect of each of the appellant's ailments individually, but also the combined effect of all of the appellant's impairments") (citing *Ferguson v. Schweiker*, 641 F.2d 243, 250 (5th Cir. 1981); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980); *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)).  The ALJ classified the following impairments as "severe": ADHD, hypertension, obesity, major depressive disorder, obsessive compulsive disorder, and degenerative disk disease at L4-5 and L5-S1 (R. 25).  The ALJ did not consider plaintiff's other impairments such as fibromyalgia (R. 993), history of hypercholesterolemia, and bipolar disorder with psychotic features (R. 1140).  Central Health Care records from January and March of 2004 indicate that the plaintiff, with a height of 5 feet, 1 inch, weighed 241.5 pounds in January and 234 pounds in March (R. 989-90).  Records from Huntsville Hospital in late 2005/early 2006 state that the plaintiff was morbidly obese (R. 1140).  Although the ALJ claims to have taken all of the plaintiff's limitations into consideration, this assertion is

further discredited by the fact that the ALJ only included physical limitations in his hypothetical to the vocational expert (R. 1232).  When the plaintiff's attorney posed the same hypothetical but included the plaintiff's mental limitations, the vocational expert testified that such an individual would not be able to perform any jobs that were sedentary or otherwise (R. 1233-34).  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000)).  Because the ALJ did not present a proper hypothetical question in this case, the ALJ's decision was not supported by substantial evidence.

The ALJ did not consider all of the evidence that was introduced.  His finding that the plaintiff is not disabled is against the substantial weight of the evidence.  This court finds that the substantial weight of the evidence dictates that the plaintiff has been under a disability since February 19, 2004, and therefore, the plaintiff is entitled to supplemental security income.

## Conclusion

"When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Secretary should

have made." *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D. Fla. 1984) (citing *Gardner v. Smith*, 368 F.2d 77, 86 (5th Cir. 1966); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972)).  Thus, this court has the authority under 42 U.S.C. § 405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir. 1984).  Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

ORDERED that the decision of the Commissioner is **REVERSED**.  This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** the 18th day of February 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE